## AS TO LIABILITY FOR INJURIES SUSTAINED BY A VOLUNTEER.

Circuit Court of Lucas County.

GENERAL RAILWAY SIGNAL CO. v. E. VALOIS, ADMINISTRATOR OF THE ESTATE OF VINCENT TODA.

Decided, June 12, 1909.

*Volunteer—Measure of Duty as to Safety—Owing to a Volunteer by One Calling for His Assistance—Assumption of Risk—Negligence of the Master or of His Servants—No Contract Relation—Motive of Volunteer—Must Take the Situation as He Finds it—Ordinary Care in Furnishing Appliances Which Are Reasonably Safe—Charge of Court.*

One who calls for and procures the gratuitous assistance of a volunteer does not owe him the duty of exercising ordinary care in the furnishing of proper tools or a safe place to work; but where the volunteer is serving a purpose of his own or of his master in complying with the request for help, he is entitled to the exercise of ordinary care on the part of the one calling him or his servants.

*Smith & Baker,* for plaintiff in error.
*Stephen Brophy,* contra.

KINKADE, J.

In this case, in which there was a judgment for the plaintiff in the court of common pleas, the plaintiff in error assigned for consideration a large number of errors, and passing for the present the errors assigned with reference to the admitting of testimony, we take up the errors to which our attention is called in the request to charge, given before argument, and in the general charge of the court. And I may say at this time that this is a case to which we have given a great deal of attention. We were cited to the case, by the defendant in error, of *Railway Company* v. *Marsh,* a decision of our own Supreme Court, 63 O. S., page 236, and it may be said that the record in the case at bar justifies the most careful study of the case of *Railway*

*Company* v. *Marsh*. There are many cases similar to this from
other states that we have also examined in connection with our
careful reading of the Marsh case. Taking up the errors as I
have mentioned in the request to charge, plaintiff asked and had
given before argument requests Nos. 3, 1, 6 and 2, and exception
was taken to the giving of 3, 1, 6 and 4, as appears by the bill
of exceptions, which leaves No. 2 as unexcepted to although it
was argued here as incorrect; and it is finally stated on the rec-
cords that the defendant excepts to 3, 1, 6 and 4 instead of 3, 1, 6
and 2. It seems that throughout this case the court treated the
case as if the railway signal company owed to Vincent Toda every
duty that it owed one of its employees, and even more in one
sense, for the court held, and the Marsh case justifies the holding,
that the railway signal company could not escape liability if
the negligence from which the injury arose was the negligence
of one of its employees, who would have been a fellow-servant
had Toda been in its employ. But aside from this, the court states
the law as fully as it could be stated if Toda had been in the
signal company's employ, in this No. 3, which reads as follows:

"3.    If the jury finds from the evidence that the decedent,
Vincent Toda, was in the employ of the Toledo Railways & Light
Company upon April 10, 1907, and was directed by said com-
pany or its agents in charge of said Toda to assist in preparing
and placing concrete at the base of a pole which the defendant
had undertaken to erect for said Railways & Light Company, and
should you further find that there was a foreman of the General
Railway Signal Co., the defendant herein, in charge of and carry-
ing on said work for the defendant, and that said foreman had
authority to employ servants, and said foreman requested said
Toda to assist in raising said pole, and if such assistance was ap-
parently necessary, or if there was an actual necessity for him
to assist in raising said pole, and if you further find that in re-
sponse to said request said Toda did assist in so doing, and was
thereby furthering or expediting the work of the Toledo Rail-
ways & Light Company, and in so assisting was injured by the
carelessness or negligence of the foreman of the General Railway
Signal Co., or any of defendant's servants engaged in raising
said pole, which proximately caused his death, then you are in-
structed that the said Toda did not assume the risk of any neg-
ligence on the part of the servants of the defendant company, if

there was negligence, and did not assume the risk of said work being done with appliances that were not suited to doing said work, should you find that said appliances were not suitable to carrying on said work, unless decedent Toda knew that said appliances were not suitable to carrying on said work, or knew of the negligence of the foreman and servants of the defendant."

We think this request as given is faulty in this regard, that it does not state, in addition to stating that Toda did not know, that Toda would not have known of the existence of these things by the exercise of ordinary care, and we think it is further faulty in this regard, that it charges the employer with the duty of seeing and knowing that the appliances with which Toda was invited to work were in an ordinarily safe condition for him to work with. It charges him with that duty, and we think he does not hold that duty, and that in that regard the charge is defective.

Request No. 1 (which follows) reads very much as the other request and I will not repeat it down to a given point, taking it up where he says that:

"If there was an actual necessity for him to assist in raising said pole, and if you further find that in response to said request, said Toda did assist in so doing and was thereby furthering and expediting the work of said Railways & Light Company, and in so assisting was injured by the carelessness or negligence of the foreman of General Railway Signal Company or any of defendant's servants engaged in raising said pole, which proximately caused his death without fault on his part, and that decedent did not assume the risk, then you are instructed that the defendant is liable in this action for any and all pecuniary damages which you find the decedent's wife and children have suffered by reason of his death."

We think this request is faulty in this regard, that it makes the railway signal company liable if there was any negligence, regardless of its degree, on the part of those assisting the foreman. The language is, "Was injured by the carelessness or negligence of the foreman of the General Railway Signal Company or any of defendant's servants engaged in raising said

pole." This request would cover as it stands the slightest negligence. The parties might be exercising ordinary care in the fullest extent that the situation demanded and still be liable because they were guilty of some slight negligence.

My attention is called to a fact by Judge Wildman that had escaped me for the moment, that this is a request given before argument, and up to this time the court had not defined ordinary care or negligence. And this request we think is faulty in another regard, in that it submits to the jury the question of whether Toda did or did not assume the risk. If the facts are admitted, it is a question of law whether he assumed the risk, and if the facts are not admitted, it is for the jury to find the facts under proper instructions from the court. It is not for the jury to determine whether he did or did not assume the risk.

We think that request No. 6, that was excepted to, might be in better form than it is, but we are not disposed to hold that request No. 6 constitutes prejudicial error in this case.

Passing now to the general charge, there was an exception to the language used by the court on page 93, as follows:

"If the deceased, Toda, sustained the injuries which later caused his death by reason of the failure of the defendant, General Railway Signal Company, to exercise ordinary care in the furnishing of machinery or appliances for the erection of the pole, or if its servants failed to exercise ordinary care in the operation of raising the pole at the time Toda was hurt, and he himself was exercising ordinary care upon his part to avoid injury at the time that he was injured, the plaintiff, the administrator of Toda, is entitled to recover in this action."

This presents perhaps clearer than any other portion of the charge, the question as to the right of a volunteer, who is not, strictly speaking, a volunteer, because he has some purpose of his own to serve, as mentioned in the Marsh case, to have the master exercise ordinary care to furnish him a reasonably safe place to work and reasonably safe appliances with which to work, and holds the master liable whether he knows the appliances are defective or not, in case they turn out to be defective. We think this portion of the charge is erroneous in this regard. We think a correct statement of the rule might be as follows:

"One who calls for and procures the services of a volunteer, gratuitously, does not owe him the duty to exercise ordinary care in furnishing a reasonably safe place or safe tools.   *   *   * The duty in this respect is not the same as that of an employer to a servant.   The volunteer is under no obligation to render the services solicited; he has no contract relation at all with the party who calls him, and he may serve or not serve as he pleases. In case a volunteer is serving a purpose of his own or his master in complying with the requests, then he is entitled to the exercise of ordinary care on the part of the party calling him, and also on the part of the servants of the party calling him, in anything they may do in connection with the voluntary service."

We have examined a great many cases on this subject.   It has given us no little concern, and we have been aided very materially by the briefs that have been furnished by the counsel in this case.   The brief of counsel for defendant in error is especially helpful in the examination of this case, and after examining a very large number of authorities we are satisfied that a volunteer, even though having some purpose of his own to serve, as the boy lighting the lamp had in the Marsh case, receiving pay from the agent, still he must take the situation as it is, as he finds it.   We see no reason why a man may not ask a volunteer to aid him in something that is in itself unquestionably hazardous, and it may be that in aiding him the volunteer is serving some purpose of his own, and it certainly can not be the law that the moment the volunteer steps to the aid of the man who calls him, a duty springs into being to make the situation which is obviously surrounded by danger reasonably safe for the volunteer to act in. A man may be called by another to aid him, if he sees fit, in stopping a runaway horse, as dangerous an occupation as he could be engaged in, probably, and the man who aids him may have some purpose of his own in aiding him, but because he volunteers it is not the law that the man who asks him must immediately put the thing in a safe position for the volunteer to act, because it may not be possible to do so.   It is very dangerous throughout, and bound to be dangerous, and the volunteer must assume it to that extent.   It is a peculiar doctrine that a volunteer can hold liable one whose servant asks him to come, merely because he is

receiving some pay for coming from some servant of the man who called him, without the knowledge of the real employer himself, but that is the holding in the Marsh case, and it is very clearly stated, and, as I have said before, we have considered this Marsh case with great care.

The next point in the charge to which exception is taken is found on page 94, and we think this is one of the serious things in this case. The language is:

"It was the duty of the Railway Signal Co., in the first instance, to adopt and furnish such machinery and appliances for the erection of the poles as would be reasonably safe for the carrying on of the work. They are not guarantors of the safety of Toda, and were not required to furnish the latest or most improved appliances for the purpose, but were required to furnish such appliances as an ordinarily prudent person would customarily employ in a like enterprise. It was also the duty of the company, after having adopted such appliances, if you find that it did so, to so use the appliances adopted by it through its servants and employees as to make reasonably safe the performance of the work of erecting the pole by those engaged therein, and not to expose them to any greater danger while engaged in the work than the nature of the work itself would ordinarily involve, and which was necessarily incident to the performance of such work in an ordinarily prudent manner."

The first thing that we note is wrong with this language is that it is squarely at variance with a very recent decision of the Supreme Court, to the effect that the duty of a master is not to make the place reasonably safe for the servants, or to furnish appliances that are reasonably safe for his use, but it is to exercise ordinary care to make the place reasonably safe and to furnish appliances reasonably safe. That is the duty relative to employees, and we can not see why the duty should be any higher relative to a volunteer, who may or may not come as he sees fit. We think this portion of the charge is clearly erroneous. And on account of the errors in the charge to which we have called attention, we think this case must be reversed.

One request was tendered by the defendant in error that the court under the testimony should instruct the jury to return a

verdict for the defendant. After a full consideration of all of the cases, we are inclined to say that were it not for the case of *Railway Company* v. *Marsh,* we would be disposed to hold that it would have been the duty of the court to have so directed, but of course the court could not direct under the evidence in this case with the Marsh decision standing as it does.

This brings us now to the errors that our attention has been called to relative to the admission of evidence, and they relate to evidence concerning the number of men necessary to erect the pole, and what was proper to be done, and expert evidence on this subject, etc. There was a general objection put in, with the consent of the court, to all this class of evidence, and an exception taken to its admission. The plaintiff in the action below sought to prove that the method by which this work was done was not correct, and to prove by expert testimony that it was not correct, and to prove that the number of men were not sufficient. We agree with the contention in the argument here of counsel for plaintiff in error that the number of men employed in this situation seems to have had nothing to do with the case at all. There were men enough employed to raise the pole; otherwise it never could have been raised. After the pole was raised a prop was placed under it, any one who reads this record will at once discover that the cause of the accident here was the improper placing of the prop by one, perhaps, who would have been a fellow-servant of Toda had Toda been in the employ of the railway signal company. But the difficulty is that Toda was not in the employ of the railway signal company. We will say this concerning all of this evidence that was admitted touching this feature of the case, that it is our opinion that this class of evidence should have been excluded. For the errors that I have mentioned the judgment of the court of common pleas will have to be reversed.

MR. BROPHY: Is there an assumption of risk in this case?

KINKADE, J.: We will answer that this way, that the volunteer, Toda, did not assume the risk of the negligence of the man who called him or his assistants or his employees, the active neg-

ligence of the men. We think he did assume the risk that is incident to the appliances with which he worked. We think the Marsh case protects him against the negligence of the man calling him and against the negligence of the servants of the man calling him in their active participation in the work to assist in the doing of which he was called.

WILDMAN, J.:

He did not assume the risk in the sense that a person assumes it by a contract of employment between master and servant, but assumed it something in the same sense that a person walking over a defective sidewalk assumes the risk, if he knows the danger or ought to see it, or ought to know it by the exercise of ordinary care. It does not grow out of contract.